Mission of Social Security. You can come forward whenever you're ready, Mr. Reynolds. Good morning, and may it please the court. My name is Leanna Reynolds, and I'm the attorney and representative for Arthur Webster, the appellant in this present case. Our case focuses on 30 central issues that were raised at the district court, and before I delve into each specific issue, because there are subsets of each issue that sort of bleed into each other, I'm just going to go over some of the succinct set of salient facts. The plaintiff in this present case, commensurate with his onset date, was admitted into a PTS cohort in May of 2016, where he stayed until July the 8th of 2016, after spending 27 months in a war zone. He was 100% service-connected disability, according to the VA, for his PTSD, after he witnessed traumatic events while in Iraq. In this present case, there was the non-examining opinions, and there were also the opinions of Dr. Small, who examined the plaintiff, that indicated that he had significant limitations in his ability to relate to peers and supervisors due to his paranoia. The first argument deals with the ALJ, or the Administrative Law Judges, consideration of the plaintiff's psychological limitations and the residual functional capacity. In our position, in our argument, that there is not substantial evidence to support the decision of the ALJ to the conspicuous absence of credible sources supporting his residual functional capacity. In his RFC determination, the only non-exertional limitations as a result of the plaintiff's psychological limitations, upon that the plaintiff was limited to routine repetitive tasks with occasional public contact. But then the ALJ in his decision talks about how he was, and this is a quote, he was persuaded by the state agency physicians because they considered carefully and found the opinion persuasive as it was well supported by the evidence of the time it was written. And when you look at the totality of the state agency physician's opinions, they are much more restrictive than what was actually assessed to the plaintiff in the decision. So here we have an opinion that the ALJ is finding persuasive, but is not in any way reflective of what is in his actual RFC determination, specifically the findings where the state agency indicates there's a mental capacity for maintaining attention and concentration for two hour periods for completing work tasks without excessive interruption from psychological symptoms. And then he goes on to say that the claimant can interact adequately on a limited basis and receive non-confrontational supervision, especially those requiring minimal interaction with others. So it's our position and our argument that if the ALJ was so persuaded by this, that it should have been more reflective in the RFC assessment that he assessed to the plaintiff. Second, looking, unless there are no specific questions about that argument. Those doctors, they did conclude he could still engage in work, which is the bottom line, right? Well, it's really hard to tell because there was never a proposed hypothetical, because it's not the doctor's determination as to whether or not someone can engage in work. If you just had a blanket statement saying this person can't work, that's sort of irrelevant for purposes of determining disability. It's whether or not the jobs exist in the national economy. So in this specific case, with those limitations, there was never actually a proposed hypothetical to the vocational expert that encompassed all of those limitations. And our biggest contention with that one is that he says there's periods sufficient for complaining work tests without excessive interruption. Well, what does that even mean? Does that mean he would have some interruptions if it's only excessive? I mean, that still kind of makes it sound like he would have interruptions throughout the workday if he's working. And it's still not in any way commensurate to this RFC that only limited him to routine repetitive tasks with occasional public contact. And the vocational expert was never opposed with this RFC that the state agency assessed to the plaintiff. And then the ALJ said he was persuaded by it. So apparently there's a conflict within that. Looking at the second argument, our first argument primarily, even giving the state agency persuasive value, it's still more restrictive than what the ALJ formulated in his initial RFC statement. But in the second argument hinges on the fact that there was material medical evidence that they did not have the benefit of when they formulated their opinion. And it's our position and our argument that if they had this before them, it's likely that their opinion of the plaintiff's non-exertional limitations would have been fundamentally different. And at the time, this was the only examining source who made an assessment as to whether or not what the plaintiff's functional limitations were. And then lastly is our position and our argument that the ALJ committed reversible error by failing to adequately develop the record. And there are regulations with respect to when consultative examinations are needed. They may be required in situations where there's evidence needed that is not contained in the available medical records. And it's a discretionary standard but it's limited to where the evidence that could have been produced would have altered the result. And in our case, it's our position and our argument that this is a prime example of a time when there was a need for the ALJ to fully develop the record and order the consultative examination. For one thing, there are conflicting facts within the decision of the ALJ and also the actual medical evidence. If you look at the, in our brief sites, as far as the physical limitations, the ALJ dismissed the need for knee and back braces, stating there was no proof in the record of such prescriptions, but we actually cite to those in the record. So I think that that would... Let me ask you about that, if I understand the record and you can correct me. The record shows that there was a knee brace, but the record does not show that the knee brace was prescribed as opposed to your client acquiring one because he thought he needed it. Do you have a response to that? I just have the citations where they document his need for knee braces, night splints on his feet, and power stabs. And it's the nature of the evidence that we have. Disseminated from the VA sometimes, it's not as... It's very all-encompassing. So you can't tell from the record if it was actually prescribed? Is that what you're saying? Well, it's cited that he needed it. So I think that's sort of, if someone needs it, then if it's like a literal prescription he gets, then that's, to me, a difference. And also the fact that, unlike other times, this was an instance where the CDE had been requested at the hearing, that it was asked of the ALJ, this is the time where we request these to fully develop the record because this has not been performed. And then there's also just the ALJ's determination with respect to the plaintiff's psychological limitations in addition to his consideration of the physical limitations. There's also discussion of his mental health limitations and the fact that this plaintiff did almost well over a month in inpatient treatment that was not considered in his decision. We feel like are conflicting facts that should have been resolved with the benefit of a consultative exam. What do you think... Counsel, could you... I'm sorry. Counsel, could you... So on number two, you said that they had, there was material medical evidence that they did not have. That's evidence that already existed, right? No, Your Honor. That it just wasn't... That's the same thing? That they want the consultative exam? I'm trying to figure out what are the distinctions between number two and number three of your argument. Well, the consultative examinations, there are instances where a plaintiff could go on his own and get one, and then there are times when the government can order one. And in this specific instance, that was not one that was ordered by the government. And it's a case where there's administrative hearings and there's fact-finding proceedings. And in this case, the ALJ dismissed that opinion and found the state agency's opinion persuasive when it's not really consistent with what is in the RFC. And then there are other factual issues. So at a minimum, at least, you know, this person given the factual predicate, say we'll let one of, you know, Social Security's physicians examine him, see what they say at a minimum, and see, you know, give him the benefit of at least one of their doctors to evaluate him. So that's what makes it different. So that's different than material medical evidence that they do not have? Correct. Even though the evidence would also create... I mean, ideally, material evidence. That's how you would have the exam. Okay. Can you... So the relief you seek, can you specify that and can you also address what effect, if any, does revised 4041520C regulation have in this case? I had a copy of it. Here it is. We just seek either remand or rendering for more consideration in support of either a new consultative examination performed by even the Social Security Administration's doctors given the factual predicate. We feel like this... I can't think of an adverse factor why this is the case, why they would not grant that. Or two, to have the non-examining physicians have access to that consultative examination before they formulate their opinions, since theirs was so persuasive. And then looking at the new regulation, one of the... In totality, it's... I brought it with me. It's close to three pages. But if you look at it, it states when new evidence... It says whether new evidence we receive after the medical source makes his or her medical opinion or prior administrative medical finding more or less persuasive. So it's our position and our argument that that evidence that was generated subsequent to the state agency's assessment made their opinion less persuasive because it is distinct from what they formulated. So that's our argument there. And that's all I have. All right, counsel. Thank you. Good morning. May it please the court. I'm Stuart Davis. I'm an assistant U.S. attorney based in Oxford, Mississippi. I brought along Sam Wright, a colleague of mine who's also helped with this case. And just... Who is that? I can't recognize him with his mask. Your Honor, it's Sam Wright. All right, thank you. And we appreciate being able to argue before you. You know, we in the civil division rarely get to come out of our dark caves. And you wanted to go to New Orleans, though, didn't you? No, no. We wanted Houston, of course. Good job. Good job. And just by way of background, our district may be unique, certainly in the Fifth Circuit, perhaps even in the country, in that all of these Social Security appeals are resolved by oral argument at the district court level, usually in front of a magistrate judge by consent. But even if it's not a consent case, we argue to the magistrate judges. They give an R&R. It keeps us busy, for sure. But that's why you'll see an oral argument transcript in the back of this record. As to the issues raised, it seemed as if counsel perhaps abandoned the waiver argument that I got a little taste of in the first argument today, having to do with meeting a listing or Dale Jay being required to make a separate finding about the claimant's ability to maintain employment that wasn't raised. That argument, I'm happy to address the merits of those if you guys would like. But what was raised, the first issue essentially is that the RFC finding, the Residual Functional Capacity finding, should have been more limiting. And the basis for that was that the state agency physicians who review these records earlier in the process gave limitations that weren't reflected in Dale Jay's RFC. Our first position on that is that given that we can't reweigh evidence in federal court, it is a request for the court to reweigh that evidence. Secondly, the RFC is accurately reflective of the DDS physician's opinion. If you look at DDS, the report in the record, there are lots of individual specific limitations. But there's also what's called the B criteria, the four functional domains. And those are perfectly reflected in the RFC. Those are understanding, remembering, and applying information. Interacting with others. Concentrating, persisting, and maintaining pace. And the ability to adapt and manage oneself. Two of those were found to be moderate, the claimant was found to be moderately impaired. Interacting with others. Well, there's an interaction limitation in the RFC. And the ability to adapt, adapt, and manage oneself. And Dale Jay explained every B criteria finding. And that is mirrored in the RFC. So, the argument that she is making. So how did the AOJ get to the position of moderate? When it appears that the state agency early on seemed to think that there were substantial limitations in even being able to do repetitive work with interruption. So, how did this drift into where, well, what caused the drift? And maybe you're saying it's not a drift. But it appeared to us to be a drift. What would be the legal basis that would support it? The factual basis. Well, it's not a drift in that the state agency positions, as they mentioned in their additional explanation paragraph, that the claimant was capable of performing routine and repetitive tasks. Despite the claimant's mental limitations. So, there's no drift. As long as he wasn't interrupted excessively. Okay, so that is just a disagreement between the claimant and ours. Because you see that sentence in every non-disabling DDS report. That is that the claimant can do these simple, routine, repetitive tasks without excessive interruption. That is affirmatively the plaintiff can do those things. And we know that because at the end of the report, there's a finding of not disabled. And earlier it was said, well, that finding, that's an ALJ's job. Well, that is ultimately an ALJ's job if you get to that point in the proceedings by having an administrative hearing. But it's DDS's job to provide limitation and then a vocational examiner to look at every one of those opinions and then say, are there jobs in the national economy that are available? And we have that, the record on appeal at 268, exactly in line with DDS. The vocational examiner checked off all the limitations and found jobs available that the claimant could perform. Counsel, you said that language about without excessive interruptions, et cetera, is in all. Is that some regulatory language or case law regulation, case law language that is now part of a form almost? I don't know that. But it's not in a regulation that says that's the standard that you're not disabled so long you can do whatever it is without excessive interruptions? I don't know that that's found in the regulations. It's just... We know that the conclusion is that that sentence is in that additional explanation paragraph  that the claimant can perform particular kinds of jobs. And there was a reference earlier to the regulatory changes with respect to how medical opinions are evaluated now. I think that's a big part of this case. There's... So far as I can tell, this court has addressed the regulation changes in a footnote in one case, Winston v. Berryhill, 755 Federal Appendix 395. And then it was mentioned, but it wasn't an issue in the case. It was mentioned but not analyzed in Barrett v. Berryhill, 906 Federal Third 340. So as far as I can tell, that hasn't been addressed in this court. And it's a significant change from the earlier regulations. The earlier regulations on medical opinion evidence were codified in 20 C.F.R. 1527. They were changed to 20 C.F.R. 1520C. Here's what's going on with that. For claims filed on or after March 27, 2017, which is what we have here, ALJs are gonna implement a new way of analyzing medical evidence. Whereas in the past, 1527 and this court's case of Newton v. Atfill required that in order to discount the weight of a treating physician's opinion, absent reliable medical evidence from a treating or examining source, the ALJ was required to go through a six-factor analysis and show good cause why to discount that opinion. Well, we don't have that anymore. The regulations were changed to hopefully sort of catch up with the times in terms of the way health care is delivered in the country. For example, many people see nurse practitioners as their primary care provider. In the older regs, they were considered not acceptable medical sources. That's been changed. So now any medical source, examining, non-examining, treating, they're all analyzed the same way. And that is, does this... The ALJ now assigns persuasive value to a medical source opinion. That's it. And the way an ALJ decides a medical source opinion is persuasive is is it consistent with the remainder of the record and is it supported by the remainder of the record? So they do that. There are other factors in the new 1520C, but the supportability and consistency are the two most important things that ALJs must address now. They don't have to address the remaining factors unless the ALJ thinks that two medical opinions essentially are tied and he needs to break a tie. He can go through the remaining factors, length of the relationship, how many visits, those sorts of things. So... Can you... I'm sorry. So other than bringing up to the times and recognizing the contributions of nurse practitioners, et cetera, does the new rule make it so that they could bring in an expert that's never seen the patient and that person's viewpoint by looking at the medical records will end up trumping a treater for 20 years or a series of multiple treaters by someone who's never even seen the patient? Would that happen now? Is that the intent and how the rule works? No, no. That's certainly not the intent is to have someone come in opine completely different than years and years of medical records and medical opinions because that opinion wouldn't be consistent with the record. The purpose of the rule change and we cited in the Federal Register on page 12 of our brief, what was happening is that, one, the treating source rule required lots of steps of analysis. And so you can imagine this is a 500-page record but you can imagine records that are thousands and thousands of pages that may have dozens of medical opinions and the treating source rule would require going through the six factors for every one. The point is to widen the aperture of how we look at these in that an ALJ can zoom back see what the record shows the longitudinal record shows and then decide that he or she is persuaded by a medical opinion that's the most consistent. It's supposed to be a more holistic review of the record and the Federal Register says, here's some reasons why we're changing. One, arguments are made like we have already had this morning that this opinion at the tail end of the timeline of the record is inherently more should be given more weight or be found to be the most persuasive. But that isn't factually true in every instance. You can imagine a scenario where there's an incredibly limited plaintiff over a number of years like Judge Elrod's example you get a medical opinion at the tail end that's contrary to that well under the old regulations if that was a treater then that one's gonna have to either get controlling weight or good cause to reject it. So now you look at it and say what does this record reflect and which opinions are more consistent and supported with that. And the ALJ did just that in this case because the psychological consultant at the tail end gave what's effectively disabling limitations. Well the ALJ looked and he looked at that one he looked at the and he found that DDS was more persuasive. Their opinions were given about in the middle of the timeline two years after the plaintiff's date that he alleged he was disabled. And he said and the ALJ said I'm gonna go with the state here because looking at the records themselves the claimant has improved with treatment, medication therapy, he's having less breakthrough symptoms DDS was more consistent this time. That's not to say that they will always be more consistent it depends on the record itself which is why they've changed the regs they want not just to federal courts to just focus in on did the ALJ articulate the right amount of weight for this opinion because of all these factors. They want the ALJ to look at all the opinions and look at the hearing testimony look at the function reports, look at the vocational analyses, look at the medical records and through that lens then assign persuasive value to the medical opinions so that's the first issue, the regulation change and it is a big change certainly a big change for this court you've got Newton vs. that's still controlling law as of today that talks about the old treating physician rule which has been eliminated Judge Elrod you were on a case Nealon vs. Berryhill where the same type of finding about good cause and weight to medical opinions is still cited a lot and so we've had, this was the first case that we argued where there was the regulation change and through the passes of time we've argued a lot more of these so if we look a little rough around the edges in the district court argument I apologize but we've argued many many more in the magistrate judges and our office and Ms. Reynolds we've all sort of caught up to it by now but I do think that this is this is the first time where the substantive change in the regulations has been presented to this court Is the effectiveness of the regulation turn on the date of the claim? What starts the change over for an individual? That's right it's for when you file either your title 2 disability insurance benefits or title 16 supplemental security income if you file that application on or after March 27, 2017 then you must then they apply the new 1520C We don't have the challenge in this case have there been challenges under those incumbent procedures whether to give a deference or not that sort of thing in other circuits? There's not been a challenge if you're asking has there been a challenge to the regulations themselves not that I'm aware of To this change? To the new not that I'm aware of and then finally see I'm running out of time the final argument presented today was that the ALJ reversibly erred by not ordering a consultative exam well there was one consultative exam from a psychologist paid for by the plaintiff right before the administrative hearing so I suspect the argument is you should have also had a physical consultative exam that is a difficult burden for the plaintiff in federal court because Mr. Webster would have to show that the ALJ abused his discretion by not doing that and it is very rarely reversed at this level you can imagine scenarios where there's two primary care visits in the record and there's just not sufficient information that the ALJ can make a decision supported by substantial evidence that is possible but here we have a 500 page record we have 33 medical visits 22 of which are after the date the plaintiff alleged that he was disabled there's no huge gaps in the treatment record that would maybe raise a red flag that the record was not developed there's opinions, there's hearing testimony, there's function reports, there's vocational analyses, there's plenty of information in here for the ALJ to discharge his duty to have the record developed and make a decision that's based on substantial evidence and if there's no other questions I'll yield the remainder of my time alright counsel thank you one point I'll make for Ms. Reynolds before you start before your clock starts there was a suggestion by a friend on the other side that you may have waived something by not arguing your brief is fully before us what you would waive I guess if you don't argue something in your brief if you can't address it you probably knew that that is one clear issue of waiver yes, so that's why in opening I just kept it to the three initial briefs all the arguments in your brief were before the court so nothing has been waived oh, well ok, well with that case keeping that in mind we have those issues but again like I said psychologically they all bleed into one another and it's just a blanket argument ultimately that there is no support for the ALJ's decision that the plaintiff when you look at his RFC just for the psychological limitations all that is in there with this lengthy history of inpatient treatment psychological problems the PTSD rating the examining physician even the non-examining physicians all he says is he is further limited to routine repetitive tasks with occasional public contact so even with the new regulations they're not absolved of having a decision that is supported by substantial evidence it's still I mean it's a low bar but it's still a bar and the DDS is exceedingly more restrictive even without the benefit of material medical evidence DDS did not have the state agency exam and then the that's why we ordered the consultative examinations I think that that is a primary difference between this case and a lot of other cases with CEs is that the council at the administrative hearing requested it saying that it was necessary to develop the record and a lot of times they're just not requested and then they come up on appeal and they're asked saying they didn't order a CE but this one was clearly expressly requested and then with respect to the other arguments that were raised in the brief 1215 is a listing level argument and while the ALJ did make a step 3 analysis with respect to the listings he did not make an analysis with respect to the PTSD which is the overarching reason why this claim was adjudicated to begin with and then there are also those series of cases with respect to not only being able to maintain like looking at the RFC employment it's not just looking at that but the whole picture of whether or not they can maintain and sustain it under that RFC and it's her position and her argument that given specifically the fact that he had such a lengthy staying in patient that he would not have been able to maintain or sustain employment so that's all I have. What do you say about the ALJ's reliance or conclusion that medication was working and that the VA records did show significant psychological improvement? Well he, I think that was more of an argument in the commissioner's brief but the ALJ talked about was how persuasive the state agency was and at that time you know and that goes into the first argument I don't want to be overly redundant but theirs is in no way their argument is in no way reflective of the RFC that was ultimately determined and I think the big issue with that even under the new ALJ didn't cite the VA records? Well he cites them he cites a lot of them there's but but as far as I think the underlying basis for his opinion and what he talked about being so, what he was so persuaded by was his opinion that is not even reflective in the RFC so that's our biggest issue there so that's all I have and for those reasons we just request remand for the ALJ to either order a consultative examination to have a non-examining physician review that subsequent consultative exam or to have the ALJ propose a hypothetical that to the vocational expert since he was so persuaded by that opinion that is reflective of that opinion so that those are the primary reasons we're requesting remand or reconsideration Alright we have your argument oh was she asking? I didn't quite hear it oh she just disappeared I think we have your argument and we may have to pause before we have another one thank you thanks to both